```
             IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


EDWARD SMITH,                   §
TDCJ-CID #876861,               §
                                §
             Plaintiff,         §
                                §
v.                              §    CIVIL ACTION NO. H-05-4366
                                §
WARDEN RICH, et al.,            §
                                §
             Defendants.        §
```

**MEMORANDUM OPINION AND ORDER**

Edward Smith, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division (TDCJ-CID), has filed a civil rights complaint against TDCJ-CID officials in both their individual and official capacities. The defendants have filed a Motion for Summary Judgment (Docket Entry No. 40) supported by records and sworn statements. After reviewing the pleadings and evidence, the court will grant the motion and dismiss this action for the reasons set forth below.

**I.   Claims and Allegations**

Smith claims that TDCJ-CID Sergeants Tracy Puckett and Brandon Hodges, along with Correctional Officer Weldon R. Love, Jr., used excessive force against him. He further claims that Sergeant Billy Jackson violated his rights because Jackson did not investigate the incident and that Warden Rich is culpable because he failed to

supervise his subordinates.  Smith seeks compensation in the amount of $250,000 from each defendant.  Smith alleges the following in his complaint (Docket Entry No. 1, at 6-8):

Smith was at the Estelle Unit to receive physical therapy for an injured arm.  On May 21, 2004, Hodges, Puckett, and Love entered Smith's cell and surrounded him.  For no reason Puckett and Love hit and kicked Smith until he fell to the floor.[1]  Then Hodges and Love pressed their knees into Smith's back and smashed a foot against his neck while Puckett attempted to slide a belt around him.  During this assault Smith's injured arm was twisted in such a manner as to cause him tremendous pain.

Smith alleges that the attack continued, and Hodges and Love lifted Smith by his shirt while Puckett punched him.  Puckett then told the other two to let Smith go.  They complied, and Smith collapsed on the floor.  Puckett asked Smith if he was going to pick himself up, but Smith could not because he had no feeling in his legs.

Hodges grabbed Smith's arm, cuffed it to Smith's belt, and repeated the inquiry about getting up.  Smith still could not get up because he was in pain.  Love stepped on Smith's legs and asked

---

[1] Smith later explained in his Objections to the Defendants' Motion for Summary Judgment (Docket Entry No. 42) that another officer had previously ordered him to leave the cell so that he could be moved to solitary confinement.  Smith stated that he refused to obey the order until he was given a disciplinary hearing.  Id. at 2.  Smith also admitted that he used profanity in expressing his refusal to obey Hodges' order to leave the cell. Id. at 3.

him if it hurt. The three officers then dragged Smith down the hallway, placed him in a wheelchair, and moved him to another cell. When they arrived at the new cell, the officers threw Smith out of the chair onto the cell's floor.

Smith asserts that he reported the incident to Sergeant Jackson expecting him to conduct an investigation. However, Jackson responded, "You got what you deserve." (Docket Entry No. 1, at 8) Apparently, no investigation was made. Smith states that he is now confined to a wheelchair and that the memories of the incident continue to haunt him. Id.

## II.  Summary of the Defendants' Arguments and Evidence

The defendants argue that Warden Rich and Sergeant Jackson cannot be held liable because they were not personally involved in the alleged assault. They contend that Hodges, Puckett, and Love are entitled to qualified immunity because Smith's injuries, if any, are de minimis and that their actions were objectively reasonable. They also argue that all of the defendants are entitled to Eleventh Amendment Immunity for claims brought against them in their official capacities.

In support of their arguments, the defendants have submitted the following records and affidavits, which are attached to their motion (Docket Entry No. 40):

Appendix A    Affidavit and Curriculum Vitae of
              Betty J. Williams, M.D.;

|  |  |
|---|---|
| Appendix B | Relevant Portions of Smith's TDCJ-CID Unit Medical Records (numbered 8-33) with attached business records affidavit; |
| Appendix C | Relevant Portions of Smith's TDCJ-CID Inmate Grievance Records (numbered 34-45) with attached business records affidavit; |
| Appendix D | Affidavit of No Records Found for the Emergency Action Center; |
| Appendix E | Affidavit of No Records Found for the Office of Inspector General; and |
| Appendix F | Affidavit of No Records Found for the Use of Force Department. |

### III. Summary Judgment Standards

In deciding a motion for summary judgment the court must determine whether the pleadings and records indicate that there is a genuine issue regarding any material fact and whether the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994).

The party moving for summary judgment has the initial burden of demonstrating the absence of a material fact issue. Kee v. City of Rowlett, Tex., 247 F.3d 206, 210 (5th Cir. 2001). To meet this burden, the movant must show that the nonmovant cannot carry its burden of proof at trial. Smith v. Brenoettsy, 158 F.3d 908, 911 (5th Cir. 1998). The movant may accomplish this by showing that the non-moving party has presented no evidence in support of his claim. Stahl v. Novartis Pharmaceuticals Corp., 283 F.3d 254, 263

(5th Cir. 2002). Once the movant has met this burden, the non-movant must present specific facts showing that there is a genuine issue for trial; otherwise, summary judgment will be entered in favor of the movant. Id.

The court construes the evidence in favor of the nonmoving party and does not weigh the evidence, assess its probative value, or resolve factual disputes. Williams v. Time Warner Operation, Inc., 98 F.3d 179, 181 (5th Cir. 1996). However, the nonmovant cannot rely on "conclusory allegations" or "unsubstantiated assertions" to establish that there is a triable issue. Wallace v. Texas Tech University, 80 F.3d 1042, 1047 (5th Cir. 1996). Nor is the nonmovant's burden satisfied by casting "some metaphysical doubt as to material facts" or where "only a scintilla of evidence" has been brought forth. Fiesel v. Cherry, 294 F.3d 664, 667 (5th Cir. 2002); Spectators' Communication Network Inc. v. Colonial Country Club, 253 F.3d 215, 219 (5th Cir. 2001). Factual controversies will be decided in the nonmovant's favor only when both sides have presented evidence showing that there is an actual controversy. Burns v. Harris County Bail Bond Bd., 139 F.3d 513, 518 (5th Cir. 1998), citing Little, 37 F.3d at 1075. In the absence of proof, the court will not assume that the nonmovant could or would prove the necessary facts. Id.

### IV. Arguments and Analysis

A. **Official-Capacity Claims**

Smith fails to present sufficient evidence with regard to his damages claims against the defendants in their official capacities. Such claims are actually suits against the governmental entities who employ the defendants. <u>Kentucky v. Graham</u>, 105 S.Ct. 3099, 3105 (1985). To prevail in an official-capacity suit, Smith must show that the government entity is the moving force behind the violation. <u>Id.</u> To do so, Smith must identify (1) a policy (2) of the policy maker (3) that caused (4) the plaintiff to be subjected to a deprivation of his constitutional rights. <u>Grandstaff v. City of Borger</u>, 767 F.2d 161, 169 (5th Cir. 1985). At the least, the plaintiff must present specific facts showing a pattern of violations in order to prevail on a claim against a defendant in his official capacity. <u>Spiller v. City of Texas City</u>, 130 F.3d 162, 167 (5th Cir. 1997); <u>Frare v. City of Arlington</u>, 957 F.2d 1268, 1278 (5th Cir. 1992). Smith has only identified an isolated incident. Such facts do not support an official-capacity claim under § 1983. <u>City of Oklahoma City v. Tuttle</u>, 105 S.Ct. 2427, 2436 (1985); <u>Bigford v. Taylor</u>, 834 F.2d 1213, 1220 (5th Cir. 1988).

**B.   Individual Capacity Claims**

Prisoner complaints of excessive use of force are reviewed under the Eighth Amendment's prohibition against cruel and unusual punishment. <u>Hudson v. McMillian</u>, 112 S.Ct. 995 (1992). The prisoner must establish that the force was not used in a good faith

effort to restore order but maliciously and sadistically to inflict harm, and that he was injured by the use of force. Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996), citing Hudson, at 999. Although a prisoner need not suffer a serious injury as a result of the use of force, he must have suffered some injury to establish an Eighth Amendment claim. See Gomez v. Chandler, 163 F.3d 921 (5th Cir. 1999). It is only a use of force that results in "wanton and unnecessary infliction of pain" that violates a prisoner's constitutional rights. Whitley v. Albers, 106 S.Ct. 1078, 1084 (1986).

The court considers the following questions in determining whether the use of force was wanton and unnecessary:

(1) What necessitated the application of force?

(2) What was the relationship between that need and the amount of force that was used?

(3) Did the responsible officials reasonably perceive that there was a threat?

(4) Did the officials make any efforts to temper the severity of their forceful response?

(5) What injuries did the prisoner suffer?

Hudson, at 999; Baldwin v. Stalder, 137 F.3d 836, 838-39 (5th Cir. 1998).

The defendants argue that the record shows that they did not use any force against Smith and that their actions were objectively reasonable in light of the facts and circumstances facing them. Defendants' arguments are supported by the administrative

-7-

grievances filed by Smith pursuant to his use-of-force allegations. (See Docket Entry No. 40, Appendix C.)

Puckett, Love, and Hodges filed separate written statements regarding the May 21, 2004, incident. Id. at 39-41. Each of them state that Smith was moved to another cell by wheelchair. They also assert that, although restraints were used, Smith did not resist and no force was used against him. Id. In addition, there are no TDCJ-CID records for the alleged incident that indicate a use of force. See Appendices D, E, and F. The TDCJ-CID has an established practice of documenting any incident where force is used against a prisoner. See, e.g., Gomez v. Chandler, 163 F.3d 921, 922 (5th Cir. 1999); Wesson v. Oglesby, 910 F.2d 278, 282 (5th Cir. 1990).

Dr. Betty J. Williams, M.D., is the Medical Director at the TDCJ-CID Eastham and Ellis Units. (See Docket Entry No. 40, Appendix A, at 1-6.) Although she and her staff have had no direct involvement in the events at issue, she has access to Smith's medical records and has the expertise to interpret them. Id. Her affidavit describes Smith's medical condition before, during, and after the incident.

Smith injured his left shoulder while working at a prison commissary in 2002. Id. at 1. He was approximately 26 years old at that time. Stiffness developed in Smith's left shoulder and neck partly because he refused to move his arm and kept it in a

-8-

sling for two years after the accident.  Id.  In 2004 Smith was transferred to the Estelle Unit in order to help him regain use of the arm.  While there Smith's health care providers noted that Smith's shoulder had atrophied due to his non-use.  Smith was uncooperative, and he continued to use a sling although he was advised not to do so.  Id. at 2.

On May 21, 2004, the date of the purported use of force, Smith was taken to the unit medical clinic for evaluation.  Id.  Physician's Assistant J. Wang examined Smith.  Appendix A, at 2.  Although Smith complained that his legs were numb and that he could not move them, he was able to turn over on the stretcher without any assistance during the examination.  Id.; Appendix B, at 8.  Wang observed that there were no skin lesions, bruises, or edematous lesions.  Appendix B, at 9.  It was also noted that Smith was tightening his muscles, actively resisting examination, and magnifying his symptoms.  Appendix A, at 2; Appendix B, at 9.  In summary, Smith could move his legs, but he refused to do so.  Appendix A, at 2.

On May 25, 2004, a nurse went to Smith's cell to see him in response to his complaints of continued leg pain and numbness.  Id.  Smith sat on his bed and refused to move saying that he needed a wheelchair.  Id.; Appendix C, at 14.  In addition to refusing to move, Smith would not cooperate with the nurse's efforts to examine him.  Smith's behavior during the visit was consistent with his

unaccommodating responses to health workers' past efforts to rehabilitate his shoulder.  Id.

When Smith was lifted into a wheelchair, it was noted that he showed resistance to passive movement of his legs.  Appendix A, at 2.  Although Smith claimed that he had to crawl around the cell, he exhibited no signs (bruised knees, soiled clothes, symptoms of incontinence) that would be found on a person whose condition required him to crawl on a concrete cell floor.  Appendix A, at 2.  Security officers confirmed that Smith had been seen walking in his cell.

Smith was transferred to the Estelle High Security Unit on June 2, 2004.  Physician's Assistant Randall Heally examined Smith while he was sitting in a wheelchair.  Appendix A, at 2; Appendix B, at 17-18.  Heally noted that while Smith claimed he could not walk he was able to move the chair with his legs and he had good muscle tone.  Id.  Heally concluded that Smith was exaggerating his symptoms and that Smith had actively resisted his efforts to examine him.  Id.  Another health provider, Debra Allen, LVN, noted that Smith was engaging in "attention seeking behavior." Appendix B, at 19.  Smith continued to complain about his legs, and on June 30, 2004, x-rays were taken of his cervical and lumbar spine.  Appendix A, at 2; Appendix B, at 22.  The results were normal.  Id.

Smith was transferred to the TDCJ-CID Stiles Unit. Appendix A, at 3.  He continued to assert that he was unable to

walk.  Id.  Consequently, the personnel at Stiles allowed Smith to keep his wheelchair for another 90 days.  Id.; Appendix C, at 25.  However, the wheelchair was confiscated when Smith started using it as a weapon.  Appendix A, at 3; Appendix C, at 28.

Smith was taken to the TDCJ-CID hospital in Galveston for an evaluation on September 28, 2004.  Appendix A, at 3.  Despite Smith's continued complaints of pain and apparent weakness, the examining physician observed normal deep tendon reflexes and noted the absence of muscle atrophy, clonus, or spasticity.  Appendix A, at 3; Appendix B, at 30.  The physician further concluded that there were no indications of spinal cord injury, but he ordered further neurological testing and a wheelchair for Smith due to his insistence that he could not walk.  Id.

The tests scheduled for December 7, 2004, were canceled because Smith refused to go back to the Galveston hospital.  Appendix A, at 3.  He again refused to go to the hospital on February 14, 2005.  Id.

A nerve conduction study was finally completed on October 11, 2005.  Id.  Although the examiner found that Smith's leg muscles had atrophied due to disuse, the result was not unexpected for someone who had been refusing to walk for the past eighteen months.  Id.  Aside from the atrophy, no neurological injury was found.  Id.  An MRI was then ordered to complete the analysis.  Id.  The MRI could not be completed until March 31, 2006, due to Smith's lack of

cooperation.  Id.  When it was completed, the MRI results were normal.  Id.  This, along with the nerve conduction study results, ruled out any physical injury from the alleged use of force on May 21, 2004.  Id.  Dr. Williams concluded that "there is absolutely no medical evidence to support any significant physical injury caused to . . . Smith as a result of the use of force incident of 5/21/04."

In his response (Docket Entry No. 42), Smith protests that his wounds are genuine and that he has been denied proper medical care. Smith's attempt to raise a claim of deliberate indifference to his serious medical needs is unfounded in light of the records showing that he has been seen and treated by numerous medical personnel. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); see also Mendoza v. Lynaugh, 989 F.2d 191, 193-95 (5th Cir. 1993).

Smith further undermines his position by revealing facts showing that he defied orders to leave his cell on May 21, 2004. See fn.1.  Smith's refusal was unwarranted in light of instructions from TDCJ-CID Classification to move him to solitary confinement. Appendix C, at 42.  In the face of such opposition, Hodges, Puckett, and Love were authorized to use the amount of physical force necessary to carry out their duty of moving Smith to another cell.  Baldwin, 137 F.3d at 840.

Contrary to Smith's assertions, Hodges, Puckett, and Love stated that they managed to extricate Smith from his cell and move

-12-

him without having to resort to any force other than placing a belly-belt around him. Appendix C, at 39-41. Smith apparently tried to complain to Sergeant Jackson about the incident. See Appendix C, at 35. However, Smith has failed to assert an actionable claim against Jackson because Jackson was not involved in the alleged assault. See Thompson v. Steele, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action."). Moreover, a unit investigation was conducted in response to Smith's complaint, and the matter was referred to the Office of Inspector General (OIG), which determined that no further investigation was necessary. Appendix C, at 36. Smith's dissatisfaction with the outcome of TDCJ-CID's administrative investigation will not support a civil rights claim because there is no constitutional guarantee that an inmate's grievance will be resolved in the inmate's favor. See Geiger v. Jowers, 404 F.3d 371, 374 (5th Cir. 2005).

Like Sergeant Jackson, Warden Rich is entitled to be dismissed from this action because there are no facts personally connecting him to the alleged deprivation. Thompson, 709 F.2d at 382. Regardless of whether there may be evidence of a violation, Rich cannot be held liable merely because he might hold a supervisory position over Hodges, Puckett, and Love. Eason v. Thaler, 73 F.3d 1322, 1327 (5th Cir. 1996) ("There is no respondeat superior liability under section 1983.").

In summary, Smith has failed to show that he has suffered a physical injury that would entitle him to relief in this action. Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997). He has also failed to show that all of the named defendants were personally involved in the alleged deprivation and that those that were involved acted unreasonably under the circumstances. Therefore, the Defendants' Motion for Summary Judgment (Docket Entry No. 40) will be granted, and this action will be dismissed under FED. R. CIV. P. 56.

### V.  Smith's Motions

Smith has filed a Motion for Discovery (Docket Entry No. 37) in which he seeks a broad number of documents including all of his medical records since May 21, 2004. He also requests duty rosters, grievance records, disciplinary records, lists of inmates housed with him, and interoffice communications since May 21, 2004. The defendants have filed a Notice of Initial Disclosure (Docket Entry No. 39) advising the court that they have complied with FED. R. CIV. P. 26. They have also raised the defense of qualified immunity. (Docket Entry No. 40, at 2)

Qualified immunity is an immunity from suit and shields officials against vexatious aspects of litigation including unnecessary discovery. See Jacquez v. Procunier, 801 F.2d 789, 791 (5th Cir. 1986). The defendants have presented relevant evidence to the court and the plaintiff. Smith's complaint has been proven

to be baseless. The Motion for Discovery (Docket Entry No. 37) shall be denied.

Smith has also filed five motions for court-appointed counsel stating that he is unable to afford an attorney and that inmates inside TDCJ-CID will only assist other inmates if they are paid. He also professes that he has only a ninth-grade education and that his physical disabilities limit his ability to draft documents. Despite his professed disabilities, Smith has managed to file sufficient pleadings in this action. There is no constitutional right to court-appointed counsel in civil rights proceedings. Jackson v. Cain, 864 F.2d 1235, 1242 (5th Cir. 1989). Appointment of counsel is not warranted in this action due to the elementary nature of its issues and Smith's demonstrated ability to draft pleadings. Wendell v. Asher, 162 F.3d 887, 892 (5th Cir. 1998). The motions for court-appointed counsel (Docket Entry Nos. 21, 28, 30, 31, and 34) shall be denied.

Smith's Notice to the Court requesting a jury trial (Docket Entry No. 32) will also be denied.

## VI.  Conclusion and Order

The court **ORDERS** the following:

1. Defendants' Motion for Summary Judgment (Docket Entry No. 40) is **GRANTED**.

2.  All other motions (Docket Entry Nos. 21, 28, 30, 31, 32, 34, and 37) are **DENIED**.

**SIGNED** at Houston, Texas, on this 21st day of November, 2006.

>                            _____
>                                       SIM LAKE
>                            UNITED STATES DISTRICT JUDGE